161765, Owan Nguyen Chung, et al. v. StudentCity.com, Inc. Good morning. My name is Joseph Masacchio. May it please the Court, I'm here with Attorney Anthony Terracone. We represent the appellants in this case and I would like to reserve two minutes of rebuttal time. Sure. On June 7, 2008, Lisa Chung drowned on a boat that was grossly overloaded during a snorkeling excursion that was part of a package that she purchased from Student City, the defendant in this case. Counsel, I don't mean to be rude, but you have very little time and we know the facts of this case. We've read your briefs. So why don't you get to the issues, primarily, whether or not Judge Zobel committed error in granting summary judgment on the grounds of lack of causation. I will, Your Honor. That judgment that was entered needs to be reversed in this case because the judge decided an issue of proximate causation that was never raised by the defendant, in which the plaintiff's never had an opportunity to conduct discovery on. It is a basic rule of practice and fairness that courts should not dismiss a case based on arguments not raised by the defendant. It is an equally true rule of fundamental fairness that a judge should not sui sponte enter summary judgment on an issue that the plaintiff was not afforded adequate time or any time at all to conduct discovery on the merits of the case. Counsel, if we apply the beyond what's actually argued on summary judgment, what is the prejudice that you've suffered here? The prejudice, Your Honor, is that judges can rule and dismiss a case on summary judgment that has not, on an issue that is not raised by the defendant. But as the court, as this court has pointed out on many occasions, there's a lurking unfairness that occurs when judges do that. And the lurking unfairness is that I'm sorry, we went through this in Block Island and we said, at least for now, we're not going to buy this lurking unfairness argument. We really do want to know how you've been harmed by what happened. Would you have done discovery on this point? Would you, if you'd been given the opportunity, have made arguments that's never been presented before the district court? That's what I'm trying to elicit from you. Your Honor, I'm going to get right to the point because I think what you're driving at is, was Judge Zobel's decision correct, even if it was never raised before? And it's our position that Judge Zobel's decision was incorrect. It was wrong for her to rule as a matter of law that we could not prove causation in this case. You have to look at the following facts. Student City's procedures required that staff be present at all events, including events held by third parties at venues controlled by third parties, whether they be a restaurant, a club, or a boat. The facts established in this case is Student City's procedures require staff members to be present at an excursion or a sponsored event 15 minutes before the event occurs to do certain things. One, assist with crowd control. Two, to monitor the excursion for potential problems and dangerous conditions. Three, to ensure that the students are protected and the event is run as safely as possible. So they assume the duty to be at every event at a third party vendor's place, whether it be a boat or any other place, to be there to protect the students from dangers that they perceive may be occurring at the time, even though the event is being operated by a third party. I asked Mr. Chute, the 30B6 designee in this case, specific questions about the scope of what that duty was. I asked him if, for example, there was a sponsored event by Student City at a club, and the staff members were present to supervise the event, and they determined that the club was grossly overcrowded, that there was limited fire exits in the building, and it was obvious to everybody that the club was overcrowded and presented a dangerous situation. He testified that in those circumstances, the club had an obligation to bring to the club owner's attention the dangerous condition that existed, and if the club owner did nothing about it, that they could take action to protect the students at the venue. You mean the staff member had that obligation? Yes, under their own procedures, Your Honor. This was established during the course of discovery, and the sole issue in the case was whether Student City assumed the duty. I asked him other scenarios. Is there a dispute of material fact about the capacity of this vessel in those waters? You seem to say 80, they seem to say 120. Here's the facts of that, Your Honor. This boat had a capacity of 220 persons, but for it to get a license to go to the area where the snorkeling was going to take place, which was off a reef, they had a license to do snorkeling excursions to that area with a passenger limitation of 80 people. This boat had over 200 people on it at the time. It is our position, just like somebody, just like a staff member who goes into the club and sees that it's terribly overcrowded and creates a fire hazard to do something about it, if a staff member was present during the loading of the Sea Star, and the boat was obviously overloaded, the staff member had an obligation to inquire the boat owner about the capacity of the boat to hold that many passengers and to take action to avoid the danger if the boat operator didn't. If you look at Mr. Shute's deposition testimony at page 398 to 400, he specifically acknowledged that the scope of the duty that these staff supervisors had was to be there, to observe, to see danger, if the danger is obvious, to take actions to protect the students. And that's what they told the parents that they would do in their promotional literature. This issue of causation creates a question of fact for the jury to decide. We never had an opportunity to make a legal argument to the district judge on this issue of causation the way I just made it to this court. Is there further discovery you would have done if you thought causation was at issue at summary judgment? I would have taken the deposition of the staff person who was present on the boat, who was off duty at the time. I would have taken the deposition of the people on the boat to have them testify whether this boat was so obviously overloaded that it didn't have the capacity to go to this reef to safely perform the suburban excursion. So it was a deposition of the staff members, deposition of people on the boat, deposition of the crew to find out various things. Was this an obvious danger? Was this foreseeable? Was it apparent to everybody that this boat was grossly overloaded? We're talking over 200 people loaded down with snorkeling equipment on a boat going to a reef. We did not have an opportunity to do discovery, not ask a single question at a deposition, send a single interrogatory, or seek a single document on the issue of causation. We were precluded from doing that. That's unfair and contrary to this court's rules. Good morning, Your Honor. I am Rodney Gould. I represent Student City. Let me first address Judge Lynch's point on capacity. The record shows that the capacity of the vessel was 250 people. There was a declaration from a governmental official that is in the record, it's in the appendix, Dario de Jesus Flota Ocamba, I'm sure I'm mispronouncing it, but forgive me. But the record also contains facts indicating that the capacity was, the boat was licensed for fewer people in waters near the coral reef. That is correct. And on summary judgment, what we look for primarily is disputed issues of material fact. We're not prepared and the district court shouldn't have been prepared to decide that issue on a summary judgment motion if there were facts in the record going both ways. There is no dispute as to the capacity. There is no dispute as to the limitation for the reefs. However, the key is, as my brother just pointed out, as to what Jason Schutt, the Student City 30B6 witness said, for it to have any ability to do anything with a common carrier, an airline, a bus, a boat, or a venue it doesn't want to operate in, the danger has to be obvious. There's not an obvious overcrowding if the capacity of the vessel is 250. But we don't know that because there's no discovery on causation. But there was. There's no discovery as to people coming in, was the overcrowding apparent? We don't have depositions from the crew members. He could have had depositions from the crew members. On the issue of duty? How would that relate to the issue of duty? He could have taken discovery or anything he wanted. That's not so. There's a limitation in Judge Sobel's orders. It's there on a motion to compel discovery. She made that very clear. That discovery here was limited to two duty issues. Was there a duty affecting the selection of the vessel? And was there a duty, what she called a duty to supervise? And she found on the duty to supervise that the duty did exist. She also ordered that there be discovery as to information that bears on defendant's duty, if any, to ensure participant's safety and how they perform that duty. They could have asked questions about that. Indeed, they did. They asked Jason Chute. He said in the internal student city memos, not whatever went to the public, but in the internal student city memos, if the danger is obvious, if there's blatant overcrowding near the emergency exit, if somebody is on a roof jumping into the swimming pool, at that point student city staff is supposed to do something. But to translate that into somehow knowing what the permit was for this vessel on this trip is not something that little people like student city people should know about. This is a commentary. Excuse me. The harbormaster said that the cause here was not only overcrowding but the fact that the boat was unbalanced. That's obvious, isn't it? Not necessarily. Not necessarily, but this is summary judgment. It may be, and don't you need discovery to determine what the facts are? The government official investigation reported that it was overcrowding and captain's negligence. There's no question about that. They do not blame us for the captain's negligence. They do not say we have to run a boat any more than we have to run a plane. He could have taken the depositions of the crew. He could have taken the depositions of the captain. He could have taken the depositions of Patricia Renteria, who's our staff person down there. He chose not to do it. He was not procured for doing so. So you're saying that when we closely examine the record, that there is no limitation of discovery in this case? That's what you're saying. I'm saying that he could discover on any issue he wanted as long as it was germane to the case. He argued causation in his complaint. Excuse me. Of course he had an allegation of causation in his complaint. I'm saying that the district court imposed no limitation on discovery. Of course it did, Your Honor. But it did not impose a limitation which would have precluded him from asking, did you notice that it was overcrowded? He asked a barrel of questions, and this is in the record, about what duty do you have under certain circumstances. He could have taken the deposition of the crew. He could have taken the deposition of Patricia Renteria, our staff person, and asked what she noticed about overcrowding. He did none of that. It could be there's a little bit of ambiguity. There plainly was a limitation on discovery. It could be that there's a phrase in the limitation order. But when I was practicing law, you tried very hard not to go beyond the limitation you thought the district judge had imposed because you might be held in contempt. And so I'm not certain we would read the little bit of ambiguity in the way that you are. You do concede that she went beyond the issues presented in the summary judgment motion. No, Your Honor. I do not because the plaintiffs conceded and argued what the causation was, the negligence of the crew. And there simply is no obligation for a lay entity such as Student City to drive a boat any more than it is to drive a plane or a bus. That's not a causation argument. That's a duty argument. And the district court found that there was a duty to supervise. Limited. Yes, that's true. There's no cross appeal on that. Jason should explain that with the reference to obvious. Now, they asked about that. They asked him multiple times about that. There was no objection to it. So I don't think the contempt issue is real in the absence of objection from counsel. And we never did object to it. It's just in my mind. That's the way I would call practicing law. You exercised extreme caution, at least in this city. There is a history of lawyers who thought that they were not transgressing discovery orders and finding to their horror that they had been found in contempt. That's very well known in the legal history of this. But certainly the other side has to object first. You can't just allow the questioning to go on and on with no objection and then move to hold the other lawyer in contempt. I don't think that's done. But again, it goes back to the point. He asks about obvious dangers. He asks about what the specific duties are in specific circumstances. He concedes that the capacity is 250. I think he said 220, but it is 250. That's what the record shows. There's nothing there that he can take in discovery that is going to alter those facts. If you send it back and let him take more discovery, which he could have done before and he chose not to do so, what is he going to find? He's going to find the capacity was 250. It was limited on this excursion to 80. There were more people than 80 on the vessel. Any observer watching people go on would not know that it is overcrowded because it's built for 250 and it's certified for 250, at least in other waters. There is no duty to define what the capacity is in these waters. That's not anything more that Student City would have to do than look for an airplane flying over the mountains. It doesn't have that expertise and it doesn't have the obligation to ferret that information out. All the cases we cite say that unequivocally. So where is he going to go? He could have done these depositions. He chose not to do so. Where is he going to go to them now? He doesn't have anything to go to that he could not have gone to or that he did not go to. He's stuck with the 250 and he's stuck with the fact that it wasn't obvious if there were 220 people on the vessel. And he's also stuck with the fact that no case ever in Massachusetts or anywhere else has said that a tour operator either guarantees safety or that it is responsible for the negligence of a common carrier, especially once negligence selection is out of the case, which it is now. If your honors have nothing further, I'll sit down. Thank you. I want to make three very quick points. I asked Mr. Shute various questions about prior practices of supervisors, staff supervisors, and what they do and what they do in certain situations because my argument was that they assumed a duty. So what they have done in the past and what they would do in hypothetical situations goes to the issue of not causation, it goes to the issue of whether their prior practices indicated that they assumed a duty. I admitted there was no common law duty here. My whole position was assumption of a duty. The district court ruled in your favor. This what? The district court ruled in your favor. Correct. And I think it's disingenuous for the defendant to come in front of this court and say that I had free rein in discovery. If you look at my document request, out of 51 out of 64 of my requests, they imposed objections to those requests on the ground that the December 12th order of the court authorized discovery only as to whether the defendant voluntarily undertook a duty to supervise to ensure the safety of Lisa Chang. They objected to my document request and I had to file a motion to compel on that issue. So how can they come into this court and say that I had free rein? If I took depositions on the issues that the defense counsel was talking about, he would have cried foul the same way he cried foul on my document request and I had to go get a motion to compel, filed, and a motion heard by the judge. It's absolutely clear in this case that discovery was limited to the issue of duty. I'm going to honor that. I'm not going to engage in far-flung discovery in Mexico on issues that relate to the merits of the overall claim. When I'm faced with a limitation on discovery like that, I would be violating the court's order. And I'm sure you, defense counsel, would have cried foul and screamed and ran into court and prevented me from doing it. You do agree with Judge Lynch's point, though, that the limitation on discovery that then adds the line and how they performed that duty is ambiguous? I would say that what she was saying was how they performed that duty related to what the scope of that duty was. It didn't give me free rein to go in and do discovery on negligence and causation. It related to how they performed that duty as to whether or not that duty extended to the situation that was presented here in this case. And I did do discovery on that issue because that's why I asked Mr. Shute, what would you do if you went into a club that was grossly overcrowded and had one emergency exit? What would you do? Because that relates to the scope of the duty. Thank you.